**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

DENEAN C. PLEDGER,

        Plaintiff,

v.                                                       Case No. 20-11125

FCA US LLC – UAW PENSION
AGREEMENT,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT**

Plaintiff Denean C. Pledger brings this action to receive benefits of a pension plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (ECF No. 1, PageID.10-12.) She alleges Defendant FCA US LLC – UAW Pension Agreement wrongfully denied her a pension by failing to properly credit her length of service. (*Id.*)

The parties have filed cross "Motion[s] for Judgment." (ECF Nos. 6, 8.) The matter has bee fully briefed. (ECF Nos. 9, 10.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, Plaintiff's motion for judgment will be denied and Defendant's motion for judgment will be granted.

**I. BACKGROUND**

Plaintiff began her employment with Chrysler (under the names Chrysler Corporation, DiamlerChrysler, or Fiat Chrysler Automobiles at different times) on April

10, 1995. (ECF No. 6, PageID.429; ECF No. 8, PageID.556.) She was off work from June 16, 1997, to February 24, 1998, and received workers compensation benefits. (ECF No. 6, PageID.429; ECF No. 8, PageID.580.) On May 12, 1998, Chrysler terminated Plaintiff's employment, but she was reinstated on May 17, 1999. (ECF No. 6, PageID.429; ECF No. 8, PageID.564.)

Plaintiff continued to work until January 15, 2000, when she took a leave of absence with workers compensation until January 31, 2000. (ECF No. 6, PageID.430; ECF No. 8, PageID.564.) Two weeks later, on February 16, 2000, Chrysler terminated her employment again, citing an alleged violation of conditions imposed through the May 1999 reinstatement. (ECF No. 6, PageID.430; ECF No. 8, PageID.564.) Plaintiff brought suit in state court, and the parties settled for $65,000 on March 27, 2001. (ECF No. 6, PageID.430; ECF No. 8, PageID.564-65.)

In 2017, Plaintiff began contacting Benefit Connect, an entity separate from Chrysler who performs administrative functions for the pension plan, to inquire as to whether she is entitled to a pension. (ECF No. 6, PageID.431; ECF No. 8, PageID.565.) After a period of informal discussions, (ECF No. 6, PageID.431-37; ECF No. 8, PageID.565-67), on January 21, 2019, Plaintiff submitted a claim for benefits to Benefit Connect. (ECF No. 6, PageID.437; ECF No. 8, PageID.567.) Benefit Connect denied the claim on April 10, 2019, reasoning that Plaintiff had fifty-six months of vested service, four months shy of the sixty months necessary to receive a pension. (ECF No. 6, PageID.437-38; ECF No. 8, PageID.568-69.)

Plaintiff appealed the decision to the FCA US LLC – UAW Pension Board of Administration ("Board of Administration"). (ECF No. 6, PageID.438; ECF No. 8,

2

PageID.569.) The Board denied Plaintiff's request on May 21, 2019, agreeing with Benefit Connect that she had fifty-six months of vested service and was not entitled to a pension. (ECF No. 6, PageID.438-39; ECF No. 8, PageID.569-70; ECF No. 5-1, PageID.292.) Plaintiff filed the instant action on March 24, 2020. (ECF No. 1, PageID.13.)

## II.  STANDARD

Plaintiff brings an ERISA benefits claim under 29 U.S.C. § 1132(a)(1)(B). Such claims are "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When an ERISA plan provides administrators discretionary authority, "[the court] review[s] a decision to deny benefits under an arbitrary and capricious standard of review." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005) (quotations removed).

The parties agree that the "arbitrary and capricious" standard applies in this case. (ECF No. 4, PageID.25.) The pension plan states:

> The Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan. Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious.

(ECF No. 4, PageID.25; ECF No. 5, PageID.149.)

The arbitrary and capricious review is "highly deferential." *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006)). It is the "least demanding form of judicial

3

review," and the court will approve a plan administrator's decision, "in light of the plan's provisions," if the decision is "rational." *Calvert*, 409 F.3d at 292. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)).

### III. DISCUSSION

Plaintiff's central argument is that Defendant's decision was arbitrary and capricious because it did not count hours earned through "back pay," allegedly provided through the parties' March 2001 settlement agreement. The court will address that issue first. It will then turn to other arguments Plaintiff raises.

### A. March 2001 Settlement Agreement

The pension agreement defines the basic parameters for entitlement to a pension. Specifically, Section 6 of the agreement states:

> An employee who loses his seniority under the labor agreement and who at the date he loses his Seniority (i) has 5 years or more of credited service and is not eligible for a pension under any other Section of this Pension Plan . . . shall be eligible for a deferred pension.

(ECF No. 5, PageID.114-15.)

The parties agree that Plaintiff "los[t] [her] seniority under the labor agreement," (*id.*), when she was terminated on February 16, 2000. (ECF No. 6, PageID.443; ECF No. 8, PageID.576.) They dispute whether Plaintiff accumulated the necessary time to qualify for a pension.

The question is one of contract interpretation. In ERISA cases, "[the court] appl[ies] federal common law rules of contract interpretation." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). "The general principles of contract law dictate

4

that [the court] interpret [a] [p]lan's provisions according to [its] plain meaning, in an ordinary and popular sense." *Id.* The court "must give effect to the unambiguous terms of an ERISA plan." *Id.* (quoting *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)). "[A]n interpretation of the plan contrary to its plain language will be arbitrary and capricious." *Adams v. Anheuser-Busch Cos., Inc.*, 758 F.3d 743, 747-48 (6th Cir. 2014). However, the court must defer to discretionary decisions of plan administrators. *See id.* (quoting *Shelby Cnty. Health Care Corp. v. The Majestic Star Casino LLC*, 581 F.3d 355, 370 (6th Cir. 2009)) (stating that an administrator's interpretation of an ambiguous plan provision "must be plausible"). "[The court] must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

Plaintiff argues Defendant improperly calculated her time of service as fifty-six months, short of the sixty months necessary to qualify for a pension. According to Section 11 of the plan:

> An employee who loses his seniority under the labor agreement on or after January 1, 1976 and who is not eligible for a deferred pension as provided in Section (6) because he does not have 5 or more years of credited service computed as provided in this Section (11) otherwise than in this Clause 12. may, for the sole purpose of determining if he is eligible for a deferred pension as provided in Section (6), and if he makes application therefor, compute his credited service as provided in this Clause 12.c. and without regard (except as otherwise in this Clause 12. specifically provided) to the other provisions of this Section (11) that grant credited service for time not worked.

(ECF No. 5, PageID.132.) Further, Clause 12.c states that "an employee who has attained age 18, shall be entitled to one year of service for purposes of this Clause 12. for each calendar year in which he accumulates 1000 hours of service." (*Id.*,

5

PageID.133.) "An hour of service shall . . . include each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by [Chrysler]." (*Id.*)

Plaintiff claims payments made pursuant to the March 2001 settlement agreement constitute back pay that can be attributed to her hours of service. The settlement agreement described the $65,000 consideration owed to Plaintiff in the following way:

> (a) Forty-Two Thousand Eight Hundred and 00/100 Dollars ($42,800.00) payable to [Plaintiff] which sum includes back pay or other wages and from which sum income and employment taxes shall be withheld by [Chrysler], and a W-2 form shall be issued in the name of [Plaintiff].
>
> (b) Twenty-Two Thousand Two Hundred and 00/100 Dollars ($22,200.00) payable to Reosti, James & Sirlin, P.C., attorney for [Plaintiff], representing attorneys' fees from which sum no income or employment taxes of any kind will be withheld but instead a Form 1099 will be issued by [Chrysler] in the names of [Plaintiff] and Reosti, James & Sirlin, P.C.

(*Id.*, PageID.33-34.) According to Plaintiff, if the $42,800.00 attributable to "back pay or other wages" is divided by her final hourly rate of pay, she would be credited with an additional 1985 hours of work or approximately fifty weeks. (ECF No. 6, PageID.444.)

However, the Board of Administration reviewed the file and found that Plaintiff did not accrue sixty months of vested service at her date of termination in February 2000. (ECF No. 5-1, PageID.292.) The Board cited Section 6, which requires workers have "5 years or more of credited service" "at the date [they] lose[] [their] Seniority" to receive a pension. (*Id.*, PageID.291-92.) Defendant argues that, although back pay is counted toward Plaintiff's time work, the settlement agreement did not specify the amount of the $42,800 attributable to "back pay" versus "other wages" or the amount of hours associated with that payment. (ECF No. 8, PageID.577.) More significantly, Defendant

6

claims the settlement agreement did not attribute the $42,800 to time worked before Plaintiff's date of termination. (*Id.*, PageID.578.) Plaintiff responds that the provisions in Section 11 of the plan, which allow for the crediting of back pay, override Section 6 and allow time to be added after the date Plaintiff "los[t] [her] Seniority." (ECF No. 9, PageID.592-93; ECF No. 5, PageID.114-15.)

The court cannot find that Section 11 of the plan unambiguously overrules the general requirements of Section 6. *See Perez*, 150 F.3d at 556. Section 6 lays the basic groundwork for the plan, requiring employees to obtain sixty months of service prior to their loss of seniority. (ECF No. 5, PageID.114-15.) Section 11 adds additional details that flesh out the basic requirements of Section 6; it recognizes back pay would count toward time served. (*Id.*, PageID.132.) However, Plaintiff does not point to a statement in Section 6, Section 11, or any other provision that explicitly allows Section 11 explanations on back pay to overrule the basic entitlement requirements of Section 6. By contrast, Section 6 unambiguously states an employee must have sixty months of service "at the date he loses his Seniority" to be entitled to a pension. *See Perez*, 150 F.3d at 556. (*Id.*, PageID.114-15.)

Such a design is not irrational, as it helps ensure finality and consistency in pension determinations. If an employee is terminated, litigation could stretch for years with uncertain results and with the potential of back pay. Although it is possible and reasonable that a pension plan count back pay toward pension eligibility years after termination, it is also reasonable for a plan to demand accurate and consistent eligibility determinations from the day an employee leaves the job. Pension plans have an

7

interest in creating and enforcing bright line eligibility rules such as the one advanced the Board of Administration and Defendant.

Furthermore, a general statement that $42,800 is awarded for "back pay or other wages" does not explain what amount was actually attributable to back pay. (ECF No. 5, PageID.33-34.) The payment does not unambiguously describe hours of service "either awarded or agreed to by [Chrysler]," which the pension agreement requires. (*Id.*, PageID.133.)

Plaintiff presents one reasonable interpretation of the pension plan. However, the plan was written to provide administrators substantial deference and control over eligibility determinations. *See Helfman*, 573 F.3d at 392. The court cannot alter that agreement, even if it disapproves. *Perez*, 150 F.3d at 557 ("[C]ourts are not permitted to rewrite contracts."). The Board and Defendants' interpretations are at least rational and plausible, *Adams,* 758 F.3d at 748, *Morgan*, 385 F.3d at 992, and the court cannot find that the decision to deny benefits was arbitrary and capricious. *Calvert*, 409 F.3d at 292.

Plaintiff briefly mentions that if the court finds the Board and Defendants' interpretations plausible, the pension plan is in violation of ERISA. (ECF No. 9, PageID.593-94.) Her motion for judgment made no mention this contention, and her complaint alleges Defendant "violate[d] . . . the terms of the plan," not that the plan itself violated ERISA. (ECF No. 1, PageID.11.) She cites 29 C.F.R. § 2530.200b-2(a)(3), which states "[a]n hour of service is each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the employer." This requirement is included in the plan itself; Section 11 of the plan restates it word for word. (ECF No. 5, PageID.133.) The requirement does not confront the greater issue of

8

whether back pay awarded well after termination of employment must be counted toward the final eligibility calculations. Defendant's interpretation that the calculation period ends at the "los[s] [of] Seniority," (ECF No. 5, PageID.114-15), is at a minimum rational, and § 2530.200b-2(a)(3), like the mirror language in Section 11, does not unambiguously bar it.

Plaintiff cites no other regulatory text that clarifies § 2530.200b-2(a)(3)'s requirement. She cites no caselaw that interprets § 2530.200b-2(a)(3) or explains its scope. *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quotation removed) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). (ECF No. 9, PageID.593-94.) From the court's independent research, neither the Sixth Circuit nor the Supreme Court have even cited § 2530.200b-2(a)(3), let alone analyzed whether it prevents plans from calculating hours of service up to termination.

Defendant states this is an "attempt to distract" from Plaintiff's central claims, and the court agrees. (ECF No. 10, PageID.656.) Defendant argues persuasively that it is far from clear that Chrysler "awarded or agreed to" specific hours of back pay, 29 C.F.R. § 2530.200b-2(a)(3), when the settlement agreement stated generally that a portion of the settlement amount "includes back pay or other wages." (ECF No. 5, PageID.33-34; ECF No. 10, PageID.654.) In all, the court will not overturn a discretionary determination based on a legal argument lacking substantial analysis or caselaw support.

### B. Remaining Arguments

Plaintiff argues Defendant's decision was procedurally improper and insufficiently thorough. First, she claims Defendant failed to consider the plan's language, specifically

9

Section 11. (ECF No. 6, PageID.444-46.) She cites *Opasik v. Sedgwick Claims Management Services*, where the court found an administrator's decision arbitrary and capricious when the initial denial made no mention of the plan's provisions and the final appellate decision "contain[ed] no evidence that the eligibility requirements were actually applied." Case No. 13-10207, 2014 WL 1305023, at *7 (E.D. Mich. Mar. 31, 2014) (Zatkoff, J.).

Here, the initial denial letter exhaustively reviewed the procedural history of the case, cited the plan provision requiring sixty months of service "at the date . . . seniority [is lost]," and recited Plaintiff's vested months of service year by year. (ECF No. 5-1, PageID.277-80.) The Board of Administration decision again cited the plan's provisions and explained that Plaintiff did "not earn [sixty months] of vesting service at [her] date of termination." (*Id.*, PageID.291-92.) This is not a case where plan administrators failed to cite or apply the plan provisions, and Plaintiff cites no requirement that administrators must exhaustively review every potentially relevant plan provision. There need only be a "rational" basis for Defendant's decision. *Calvert*, 409 F.3d at 292.

Even so, the administrators did analyze Section 11 when, early in the proceedings, they corrected Plaintiff's vested months for the year 1999. The administrators increased Plaintiff's vested months from eight to twelve because she worked over 1,000 hours, as required under Section 11. (ECF No. 5, PageID.52-53.) This number was used throughout the process and up to the Board's final denial of benefits. (ECF No. 5-1, PageID.288, 292.) Simply because plan administrators did not cite another portion of Section 11, not directly relevant to the administrators' reasoning,

10

that Plaintiff claims supports her side does not make the decision arbitrary and capricious.

Plaintiff next argues administrators did not provide an adequate explanation for their decision because the March 2001 settlement agreement and Plaintiff's claim of back pay were not mentioned.[1] (ECF No. 6, PageID.446-48.) Title 29 C.F.R. § 2560.503-1(g)(1)(i)-(iii) requires that plan administrators state "[t]he specific reason or reasons for [an] adverse determination," "[r]eference to the specific plan provisions on which the determination is based," and describe "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *Accord* 29 U.S.C. § 1133(1) ("[E]mployee benefit plan[s] shall . . . set[] forth the specific reasons for [a] denial, written in a manner calculated to be understood by the participant.").

Here, the initial denial letter from Benefit Connect explained in detail Section 6's requirement that Plaintiff obtain sixty months of service at the time of seniority loss. (ECF No. 5-1, PageID.278-79.) The letter laid out each year of Plaintiff's service and detailed how many months she was credited. (*Id.*) The Board of Administrator's "reviewed" this explanation, cited Section 6 again, and explained that Plaintiff had not obtained sixty months of service "at [her] date of termination." (*Id.*, PageID.290-92.)

---

[1] Plaintiff implies Defendant did not count Plaintiff's time on workers compensation from June 16, 1997, to February 24, 1998, and in January 2000. (*See* ECF No. 6, PageID.447.) However, both Benefit Connect and the Board of Administration recognized twelve months of service in 1997, five months in 1998 leading up to Plaintiff's temporary separation in May 1998, and three months in 2000 up to Plaintiff final termination in February 2000. (ECF No. 5-1, PageID.288, 292.) Defendant did not erroneously exclude Plaintiff's time on workers compensation from eligibility calculations.

11

Plaintiff was provided the "specific reason . . . for [an] adverse decision," and administrators repeatedly cited to the plan provision their decision relied on. 29 C.F.R. § 2560.503-1(g)(1)(i)-(ii). Because Plaintiff had not worked for Chrysler for over fifteen years and she had not received sufficient months of service, no "additional material or information [was] necessary for [Plaintiff] to perfect her claim." 29 C.F.R. § 2560.503-1(g)(1)(iii). Plaintiff was made aware of Defendant's justification for denying her benefits request; she was not left to guess what administrators relied on to make their determination. *Compare McCartha v. National City Corp.*, 419 F.3d 437, 446 (6th Cir. 2005) (finding a procedural violation where the employee "was never timely informed . . . of [a] bas[is] for the termination of benefits"), *with Moore v. Lafayetter Life Ins. Co.*, 458 F.3d 416, 436-37 (6th Cir. 2006) (finding no procedural violation where the administrators explained why the claimant fell outside the coverage of the plan and "placed [the claimant] on notice as to why [they] [were] denying benefits"). Plan administrators were not required to reject in detail the legal arguments Plaintiff advanced in support of her claim.

Plaintiff makes a similar argument that Defendant failed to consider new evidence when Plaintiff appealed her initial denial of benefits. (ECF No. 6, PageID.448-49.) Specifically, she claims the Board did not review or consider the settlement agreement. (*Id.*) As stated above, it was not arbitrary and capricious for Defendant to conclude that the settlement agreement did not add hours of service to Plaintiff's record after she was terminated. The Board recited Section 6 and applied it to Plaintiff's case, finding that she had not provided sixty months of service before termination. (ECF No. 5-1, PageID.291-92.) The reasoning was straight forward and did not require inquiry into

hours of service that Plaintiff argued should be awarded after termination. Plaintiff described the March 2001 settlement agreement and attached the relevant provision to Plaintiff's notice of appeal. (*Id.*, PageID.283-84.) The Board "reviewed" these documents and came to its benefits determination. (*Id.*, PageID.290, 292.) As is required, the court will defer to the Board's rational findings. *Helfman*, 573 F.3d at 392.

Plaintiff adds a final argument in response to Defendant's motion for judgment. She claims Defendant's decision was tainted by a conflict of interest. (ECF No. 9, PageID.597-98.) According to Plaintiff, Chrysler has an inherent interest in denying benefits. But Chrysler did not make Plaintiff's benefits determination. First it was Benefit Connect, and then it was the Board of Administration. The Board has six members, three appointed by Chrysler and three appointed by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). (ECF No. 5, PageID.149.) Plaintiff states that Benefit Connect relied on information and vesting determinations made by Chrysler. She cites no caselaw holding that use of information creates a conflict of interest for an otherwise non-interested fiduciary. Further, Plaintiff did not file a Statement of Procedural Challenge, as required in the court's scheduling order, (ECF No. 3, PageID.21-22), which may have permitted additional discovery. Thus, Plaintiff's eleventh-hour procedural attack lacks "particularized evidence that a conflict of interest affected [the] denial." *Card v. Principal Life Ins. Co.*, 790 F. App'x 730, 736 (6th Cir. 2019). Plaintiff even admits there is "no direct evidence that [Chrysler] acted upon [a] . . . conflict of interest." (ECF No. 9, PageID.598.)

## IV. CONCLUSION

The pension plan at issue grants administrators exceptional deference on questions of eligibility. The administrators' justifications for denying Plaintiff benefits were not irrational or implausible, and the decision was not arbitrary and capricious. *Calvert*, 409 F.3d at 292. Judgment will be awarded in Defendant's favor. Accordingly,

IT IS ORDERED that Plaintiff's "Motion for Judgment" (ECF No. 6) is DENIED.

IT IS FURTHER ORDERED that Defendant's "Motion for Judgment" (ECF No. 8) is GRANTED. A separate judgment will issue.

s/Robert H. Cleland          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 28, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 28, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-11125.PLEDGER.CrossMotionsforJudgment.RMK.2.docx